IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, : | |
| : | Case No. 2:04-CV-1104 |
| Plaintiff, : | |
| : | |
| v. : | MAGISTRATE JUDGE KING |
| : | |
| : | |
| FREDERICK PEARSON, *et al*. : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

This is a declaratory judgment action in which the remaining parties seek a determination of their rights and obligations under a liability insurance policy and an umbrella insurance policy (the "*Insurance Policies*") issued by plaintiff to MH Logistics Corporation ("MH Equipment"), in connection with a motor vehicle accident. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the parties' motions for summary judgment. For the reasons that follow, the motion for summary judgment of plaintiff, Doc. No. 90, is **DENIED** and the motions for summary judgment filed on behalf of intervening defendants William Holley and State Farm Mutual Automobile Insurance Company ("State Farm"), Doc. Nos. 84, 87, are **DENIED**. Because the motions can be resolved on the written memoranda, the defendants' request for oral argument is likewise **DENIED**.

**I.    BACKGROUND**

On June 28, 2004, Frederick Pearson, an employee of MH Equipment, drove his work vehicle, a 3500 Chevrolet Silverado truck, home from work as he did every workday.

*Deposition of Frederick Pearson*[1] (*"Pearson Dep."*) at 20; *Second Deposition of Mark Dacken*[2] (*"2006 Dacken Dep."*) at 25-25, Doc. No. 44.  Once home, Pearson consumed alcohol and then drove the truck, with his stepson Michael Sayre as a passenger, to a location in Fairfield County, Ohio, to photograph deer.  *Id.* 84-85.  At approximately 7:30 p.m., the truck driven by Pearson struck a vehicle stopped at a red light, killing its driver, Dewey Workman.  *See Complaint* ¶¶ 19-22.  The accident also caused injury and property damage to others, including William Holley, whose subrogated insurer, State Farm, made payment under its policy in connection with the accident.  *See Intervening Defendant William C. Holley's Counterclaim for Declaratory Judgment* ¶¶ 19-26, Doc. 83; *Intervening Defendant State Farm's Counterclaim for Declaratory Judgment,* ¶¶45-46, Doc. No. 86.[3]

Pearson's blood alcohol level indicated that he was legally intoxicated at the time of the accident.  He was traveling between 89-92 miles per hour before he attempted to stop.  *Ohio State Highway Patrol Report*, *Exhibit 5* attached to Doc. No. 51.   Pearson plead guilty to aggravated vehicular homicide and was sentenced to a term of incarceration.  *Pearson Dep.* at 10.     Pearson's employment with MH Equipment required him to be on call twenty-four hours per day, seven days per week, to service his employer's customers.  *2006 Dacken Dep.* at 24-25, 32.  The company's written  policies prohibit personal use of work vehicles without prior approval from a manager or supervisor.  *Company Van Policy* attached as *Exhibit 1* to Doc. No.

---

[1] Mr. Pearson's deposition was filed with this Court on March 31, 2006.  Doc. No. 39.

[2] Mr. Dacken is the service manager at MH Equipment.  *2006 Dacken Dep.* at 7.  He was the direct supervisor of Pearson during Pearson's entire employment with MH Equipment.  *Id.* at 28.

[3] The claims associated with Mr. Workman's death and losses sustained by Melissa Reed have been resolved.  *Dismissal Entry,* Doc. No. 78; *Order,* Doc. No. 71.

51.  The parties agree, however, that Pearson was never provided a copy of the company's written vehicle policy.  *See File Notes - Investigation* attached as *Exhibit 3* to Doc. No. 51.

The parties disagree as to whether Pearson was customarily permitted to operate a company vehicle for personal use.  Defendants take the position that Pearson was always permitted to do so as long as he informed the company either before or after the personal use; defendants also contend that Pearson was on occasion permitted to take non-employees as passengers in the vehicle.  *See Pearson Dep.* at 142, 189-192.  Plaintiff, however, contends that Pearson was required to obtain authorization before personal use of the vehicle and that non-employees were never permitted in the vehicle.  *See Deposition of Mark Dacken* ("*2005 Dacken Dep.*") at 67-69, 93-94, 102-105, 112, Doc. No. 43.

All parties agree that Pearson was never reprimanded for his personal use of his work vehicle.  *See id.* at 82-83; *Pearson Dep.* at 142.  Further, it is not disputed that the company's written vehicle policy prohibits operation of a company vehicle while under the influence of alcohol.  *See Company Van Policy*.  Also, all parties agree that, had Pearson sought permission to drive the vehicle after drinking, permission would have been denied.  *See Pearson Dep.* at 192-93; *2006 Dacken Dep.* at 104-105.

Resolution of the claims remaining in this action turns on whether Pearson was, at the time of the accident, a permissive user of the MH Equipment vehicle under plaintiff's policies of insurance issued to MH Equipment.  Plaintiff takes the position that Pearson was not and that, accordingly, its policies provided no coverage for the injuries and losses sustained as a result of the accident.  Intervening defendants William Holley and State Farm take the position that, at the time of the accident, Pearson was a permissive user and that, accordingly, plaintiff's policies

3

provide coverage for the losses caused by Pearson's operation of the MH Equipment truck.

## II.     DISCUSSION

### A.     Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ."  Fed. R. Civ. P. 56(c). *Id.* In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Equipment v. Catrett*, 477 U.S. 317,  322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.  The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

### B.     Analysis

There is no dispute that Ohio law applies to this diversity action. *See Bamerilease Capital Equipment v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (Ohio law requires that contracts be interpreted according to "the law of the place of the contract's making").  Plaintiff's

liability insurance policy[4] provides:

> Any permitted user. Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire or borrow is a protected person.

The liability insurance policy also provides:

> Right and duty to defend. We'll have the right and duty to defend any claim or suit for covered bodily injury . . . made or brought against a protected person.

*See Insurance Policies*.[5]

In Ohio, permission to use a vehicle may be either express or implied. *Erie Ins. Group v. Fisher*, 15 Ohio St.3d 380, 383 (1984). That permission, however, must exist at the time of accident and may not be based upon mere "initial permission." *Id.*; *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 171-72 (1983). If the driver's use of a covered vehicle represents a complete departure or gross deviation from the scope of permission originally granted by the insured, no coverage will be extended. *Eric Ins. Group,* 15 Ohio St.3d at 383; *Frankenmuth*, 6 Ohio St.3d at171.

Plaintiff contends that, at the time of the accident, Pearson was not a permitted user under the policies because he was intoxicated. Plaintiff reasons that, regardless of the issue of permission for personal use, Pearson's intoxication constituted a gross deviation from any

---

[4] The authenticated *Insurance Policies* were manually filed with the Clerk's Office. Doc. No. 55. There is no dispute that plaintiff's umbrella policy provides coverage if there is coverage under its liability insurance policy.

[5] This coverage is mandated by O.R.C. §4509.51, which requires, *inter alia,* that every owner's policy of motor vehicle liability insurance "insure the person named therein and any other person, as insured, using any such motor vehicles with the express or implied permission of the insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicles within the United States or Canada. ..." O.R.C. §4509.51(B).

5

permission originally granted to him by MH Equipment and served to vitiate any such permission in light of MH Equipment's rule that prohibits driving a work vehicle for any purpose while under the influence of alcohol. The Court disagrees.

In assessing whether the use of the vehicle was permitted, *Frankenmuth* and *Erie* focused on the time, place and purpose of the use of the vehicle, not on the manner of its use. Subsequent cases have made clear that limitations on the manner of use will not serve to limit coverage. For example, this Court has previously explained, in the context of a leased vehicle:

> First, not all limits on the use of a leased vehicle constitute limitations on the scope of the lessee's permission to use that vehicle. Specifically, only those limits that dictate that the leased vehicle may be used in a specific place, for a specific period of time, or for a specific purpose actually limit the scope of permission. *Allstate Ins. Co. v. Porter*, 1992 Ohio App. LEXIS 3959, Case No. 91 AP-1441, 1992 WL 185669, at *4-*5 (Ohio Ct. App. July 28, 1992) (citing *Frankenmuth Mut. Ins. Co v. Selz*, 6 Ohio St.3d 169 (Ohio 1983); *Gulla v. Reynolds*, 151 Ohio St. 147, 85 N.E.2d 116 (Ohio 1949)).
>
> Other limitations, such as the one in this case prohibiting use of a rental car while under the influence of intoxicants or drugs, do not limit the scope of the lessee's permission; rather, they restrict the manner of use contemplated by the lessor. [*Porter*,] 1992 Ohio App. LEXIS 3959, *5; *see Jewell v. State Farm Mut. Auto. Ins. Co.*, 1994 Ohio App. LEXIS 1842, No. 93 CA 89, at *3 (Ohio Ct. App. Apr. 15, 1994). Therefore, using the leased vehicle in a manner that violates such restrictions, as Downey arguably did here, does not vitiate the insurance coverage. *Id.*

*Electric Ins. Co. v. Wallace*, 2002 U.S. Dist. LEXIS 23911, Case No. C-1-00-1056, *11 (S.D. Ohio Nov. 4, 2002).[6] As this reasoning is applied to this case, the time, place and purpose of

---

[6] When faced with an issue of Ohio law, this Court looks first to decisions of the Ohio Supreme Court. If that court has not decided the legal question before this Court, then the Court may rely on state appellate court decisions unless there is persuasive indication that the Ohio Supreme Court would rule otherwise. *Arnett v. Myers*, 281 F.3d 552, 565 (6th Cir. 2002). The Ohio Supreme Court has not addressed the precise issue presently before this Court, and this Court has found no indication that the Ohio Supreme Court would not follow *Porter* and *Jewell*.

Pearson's use of the truck on June 28, 2004, *i.e.,* traveling after work to Fairfield County in order to photograph deer, may have been impliedly authorized by MH Equipment. As *Wallace* makes clear, the manner in which Pearson operated the truck, *i.e.,* while intoxicated, will not serve to limit the scope of permission.

The cases upon which plaintiff relies in arguing that intoxication alone constitutes a gross deviation from the scope of permission are factually inapposite. In *Westfield Ins. Co. v. Grange Mut. Cas. Co.*, 1986 Ohio App. LEXIS 9117, Case No. 16-85-7 (Wyandot County Nov. 17, 1986), the employee's consumption of alcohol was only one of a number of factors indicating that the employee operated the vehicle without permission. *Id.* at *13 ("Dean, himself, has admitted that he always requested permission to take his wife along, that he had never stopped at friend's houses with the truck prior to this incident, and that he never had any permission to consume alcohol while operating the truck. Under circumstances and undisputed facts such as these, there can be no conclusion other than that, as a matter of law, Dean's use of the truck at the time of the accident constituted a gross deviation from the scope of any permission granted."). The other cases upon which plaintiff relies address exclusionary clauses purporting to limit coverage to settings where the offending driver has a "reasonable belief" that he is entitled to use the vehicle. *Ludwig v. Niccum*, 1999 Ohio App. LEXIS 4908, Case No. WM-99-004 (Williams County October 18, 1999) ("clause excludes from coverage any person 'using a vehicle without a reasonable belief that person is entitled to do so'"); *Patterson v. Betarie*, 1996 Ohio App. LEXIS 1216, Case No. 95-L-132 (Lake County March 29, 1996) (same); *Buckeye Union Ins. Co. v. Lawrence*, 70 Ohio App.3d 76 (Putnam County 1990) (same). Because the *Insurance Policies* at issue in this case do not contain exclusionary clauses to which the "reasonable belief"

7

test may be applied, these cases offer little guidance.

In any event, an attempt to limit coverage based on the manner of operation is void as against public policy since it would effectively nullify O.R.C. § 4509.51, which requires that motor vehicle liability insurance coverage extend to permissive users. As *Porter* persuasively explains:

> An exclusion from liability coverage of drivers who fail to obey the law, including the laws against driving under the influence of alcohol, although clearly stated . . ., is a direct violation of R.C. 4509.51, because it renders its broad omnibus coverage almost a complete nullity because generally a driver becomes liable to an injured party as a result of a traffic violation.

1992 Ohio App. LEXIS 3959 at *14.

Thus, this Court concludes that, if Pearson was permitted to operate the MH Equipment vehicle after work on June 28, 2004, to travel with his stepson to Fairfield County to photograph deer, the fact that Pearson operated the vehicle while intoxicated was not, alone, a gross deviation from the scope of that permission.

Whether or not Pearson's use of the truck would have been permitted had he not been intoxicated is an issue upon which the parties disagree. Plaintiff contends that, although Pearson had not received the written work vehicle policy, he had been verbally informed of the contents of that policy at least twice. *2005 Dacken Dep.* at 93-94, 102-105, 112. Plaintiff specifically asserts that Pearson knew that he was not permitted to use the truck for personal reasons without prior permission from his manager. *See id.* Plaintiff further maintains that this policy was enforced during Pearson's employment with MH Equipment. *See id.*[7]

---

[7] "According to Dacken, from January 2004 (when MH Equipment hired Pearson) to June 2004 (when the accident at issue occurred), MH Equipment employees would call Dacken and ask permission

However, Pearson testified that he had been told that he could use the truck for personal reasons so long as he notified MH Equipment either before or after each such use. *Pearson Dep.* at 142, 189-192. On at least 10 to 15 occasions, Pearson testified, he notified his manager that he had used the vehicle for personal errands; he was never advised that this use was against company policy. *Id.* at 142. It is uncontroverted that Pearson was never reprimanded for his personal use of the company truck. *2005 Dacken Dep.* at 82-83; *Pearson Dep.* at 142.

The record before this Court presents a genuine issue of material fact not susceptible to resolution on summary judgment. Specifically, it is unclear whether the MH Equipment vehicle policy, which prohibited personal use of company vehicles without prior management approval, was in force at the time in question. If Pearson had permission, either express or implied, to utilize the truck for personal reasons so long as he subsequently informed MH Equipment of that use, then he may very well qualify as a permitted user under the *Insurance Policies* on June 28, 2004, when he caused the motor vehicle accident that allegedly resulted in the injury and loss sustained by the intervening defendants. In light of this genuine issue of material fact, the parties' motions for summary judgment, Doc. Nos. 84, 87, 90, are **DENIED**.

July 10, 2007                                     *s/Norah McCann King*
Date                                                  Norah McCann King
                                                             United States Magistrate Judge

---

to make reasonable, personal stops in their company vehicle on their way home. Dacken testified that he allowed such personal use of a company vehicle if he felt the request was 'reasonable,' but 'it was the exception.' *[2005] Dacken [Dep.]* at 47-48."

*Plaintiff's Motion for Summary Judgment,* at 10-11.